UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL JEAN SPEAR, BILLIE JEAN GERKE, and TWIN CEDARS CAMPING AND VACATION RENTALS, LLC,<br><br>    Defendants. | Case No. 2:22-cv-00439-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Plaintiff United States of America's motion for summary judgment (Dkt. 23). Having thoroughly considered the parties briefing and the relevant record, the Court finds oral argument unnecessary. For the reasons explained below, the Court will grant the government's motion in part.

## BACKGROUND

### A.    Factual background[1]

---

[1] As discussed below, Defendants did not substantively respond to the government's summary judgment motion. Accordingly, the Court will assume that the facts in the government's motion are undisputed. *See* Idaho Dist. Loc. R. 7.1(e)(2); *see also Cristobal v. Siegel*, 26 F.3d 1488, 1491 (9th Cir. 1994).

**MEMORANDUM DECISION AND ORDER - 1**

This case involves a property dispute between the United States and Defendants Michael J. Spear, Billie J. Gerke, and Twin Cedars Camping and Vacation Rentals, LLC. Mr. Spear and Ms. Gerke are a married couple who formed Twin Cedars. Mr. Spear and Ms. Gerke, individually and through Twin Cedars, rent vacation homes, tents, RV sites, and other properties near Sandpoint, Idaho. Since approximately 2015, the defendants have possessed, used, advertised, and rented facilities or sleeping accommodations located on property owned by the United States without its consent or permission. Specifically, the defendants have built or erected one or more tepees and tents, a tent pad, a boat house, railings into the water, a hammock, shower, plumbing and electrical equipment and facilities, a boat ramp, dock, gazebo, and fence, located on real property that the United States describes as Tracts Q-1783 and Q-1786.

The ownership of Tracts Q-1783 and Q-1786 can be traced back to the Flood Control Act of 1950. The Act granted the United States authority to acquire lands in and around Sandpoint, Idaho to build a dam at Albeni Falls, thereby expanding Lake Pend Oreille. Throughout the early 1950s, the United States acquired land interests to facilitate the dam construction project through various means, including private sales and condemnation. Once the United States gained an interest in real property, the land was then managed by the United States Army Corps of

Engineers (USACE) as part of the greater Albeni Falls Damn Project.

The United States contends that it acquired the property at issue between 1954 and 1956. Specifically, the United States acquired Tract Q-1783 in fee simple by condemnation. The United States began the condemnation proceedings in 1953 by filing its Declaration of Taking in *United States v. Peterson*, et al., Civil; No. 1894-N (District of Idaho). On July 23, 1956, the United States District Court for the District of Idaho issued a final judgment awarding Tract Q-1783 to the United States and compensation to Henry and James Peters for the land transfer. Although a large portion of Tract Q-1783's approximately 145 acres is now submerged, the parcel includes lands east of Sunny Side Road and north and south of the Hawkins Point public boat launch.

The United States acquired Tract Q-1786 by sale and warranty deed from Richard and Stana Kimmons in 1954. The relatively small parcel of land currently encompasses the Hawkins Point public boat launch, and the lakefront lands directly to the south of the boat launch. Generally, USACE manages Tracts Q-1783 and Q-1786 as public land for the benefit of all persons.

The United States and USACE first became aware of the encroachments on Tracts Q-1783 and Q-1786 in 2015. Throughout 2015 and 2016, the government attempted to informally resolve this matter by requesting that Mr. Spear remove

and explain the construction of the encroachments. In 2017, after Mr. Spear failed to remove any of the encroachments, USACE's Chief for Realty Operations in Seattle sent him multiple letters requesting that Mr. Spear remove any encroachments. Over the next few years, the government continued to send Mr. Spear letters demanding that he remove the encroachments while taking additional steps to ensure that the United States was the rightful owner of the land, including requesting a title guarantee from its insurance company and commissioning a survey of the subject property.

On July 8, 2022, the United States Attorney's Office sent separate letters to Mr. Spear, Ms. Gerke, and Twin Cedars by certified mail. The letters again explained the basis for the United States' ownership of the subject land and gave the defendants 30 days to provide input or response. After the defendants refused to accept the letters, the government personally served each defendant through a process server. Although Mr. Spear and Ms. Gerke responded to the letters, neither defendant took any action to remediate the alleged trespass. After years of attempting to have the defendants remove the encroachments on Tracts Q-1783 and Q-1786, the United States instigated this lawsuit.

### B.    Procedural history

On October 20, 2022, the government filed a verified complaint against Mr.

Spear, Ms. Gerke, and Twin Cedars, alleging three claims for ejectment, trespass, and nuisance, all relating to the defendants' allegedly unlawful possession and use of the United States' property. *See Compl.*, Dkt. 1. The government's complaint seeks relief in the form of a declaration and judgment, an injunction requiring defendants to vacate the subject property and remove any encroachments, and disgorgement of any monies received for renting out the subject property to third parties. *See id*. at 16-17.

On October 30, 2022, and December 13, 2022, the government served the defendants with the complaint and summons. *See* Dkts. 6-8, 10-11 (out of an abundance of caution, the government elected to serve Ms. Gerke and Twin Cedars a second time). On December 27, 2022, and January 4, 2023, Mr. Spear and Ms. Gerke filed an Answer and Duplicate Answer, appearing to be proceeding pro se in this matter. *See Answer* at 12, Dkt. 12 (the answer is only signed by Mr. Spear and Ms. Gerke); *Duplicate Answer* at 12, Dkt. 13 (same).[2] However, unlike Mr. Spear and Ms. Gerke, Twin Cedars has not yet filed an answer to the government's complaint, nor has it filed a notice of appearance.

Since filing their answers, Mr. Spear and Ms. Gerke have apparently decided

---

[2] In large part, Mr. Spear and Ms. Gerke's answer is incomprehensible and contains a series of attachments that seem unrelated to the government's claims.

to refuse any mail sent to them regarding this lawsuit, regardless of whether set by the Court or the government.[3] *See, e.g.,* Dkts. 30-35, 38-47, 49-53. Nonetheless, on April 3, 2023, the government pushed forward with its case and filed a motion for summary judgment. *See Gov.'s Br.*, Dkt. 23. Through its motion, the government seeks judgment as a matter of law on its claims for ejectment, trespass, and nuisance. *See id.* at 18-19. However, the government has requested "that the Court bifurcate remedies and damages from the legal issues presented in this motion." *Id.* at 19. In other words, the government seeks summary judgment on liability under each claim.

Although Ms. Gerke and Mr. Spear have not filed a response to the government's summary judgment, they did file three "notices" with the Court. *See* Dkts. 29, 36, and 53. The relevance of Ms. Gerke and Mr. Spear's "notices" is not readily apparent; nor do they indicate any connection to the government's summary judgment motion. *Id.* However, the notices contain various deeds and acknowledgments of deeds to land presumably owned by one or more of the

---

[3] The Court notes that Mr. Spear and Ms. Gerke's refusal to participate in this litigation has created procedural challenges. The Court, however, is not responsible for a party's decisions and has done its best to provide the defendants with copies of all relevant pleadings and orders. The Court has tried in every way to conduct the proceedings to provide them with due process of law, despite their refusal to participate in the case.

**MEMORANDUM DECISION AND ORDER - 6**

defendants. *See, e.g.,* Dkts. 29-3, 29-4, 29-5, 29-6, 36-2, 36-3, 36-4 and 36-5 (while multiple copies of each deed were filed, in total, the defendants provided a warranty deed, gift deed, and deed of trust).

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id*. at 252.

In deciding whether there is a genuine dispute of material fact, the Court must view the facts in the light most favorable to the nonmoving party. *Id*. at 255; *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) ("Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there any genuine issues of material fact and whether the district court correctly applied the relevant substantive law.") (citing *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000)). The court is prohibited from weighing the evidence or resolving

disputed issues in the moving party's favor. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

## ANALYSIS

### A.    Relevant material facts

As a threshold matter, the Court must clarify the factual basis for its decision. Idaho District Local Rule 7.1 outlines:

> In motions brought under Federal Rule of Civil Procedure 56, if the non-moving party fails to timely file any response documents required to be filed, such failure shall not be deemed a consent to the granting of said motion by the Court. However, if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Federal Rule of Civil Procedure 56(c) or Local Rule 7.1(b)(1) or (c)(2), the Court may consider the uncontested material facts as undisputed for purposes of consideration of the motion, and the Court may grant summary judgment if the motion and supporting materials—including the facts considered undisputed— show that the moving party is entitled to the granting of the motion.

Idaho Dist. Loc. R. 7.1(e)(2); *see also Cristobal v. Siegel*, 26 F.3d 1488, 1491 (9th Cir. 1994) (explaining that a nonmoving party's failure to respond to a motion for summary judgment, alone, does not provide authority to grant the motion; instead, the court must independently evaluate its sufficiency). Similarly, the Court's notice to pro se litigants informed Mr. Spear and Ms. Gerke what a motion for summary judgment is, and how and when they were required to respond to the government's motion. *See Notice* at 2, Dkt. 23 ("**You are warned** that if you do not file your

response opposing the motion within 21 days (or such other time period set by the

Court), the Court will consider the facts provided by the moving part as undisputed

and **may grant the motion** based on the record before it[.]") (emphasis original).

However, Mr. Spear and Ms. Gerke have yet to respond to the government's

summary judgment motion.[4]

Accordingly, pursuant to this Court's notice, as well as Idaho District Local

Rule 7.1, the defendant's failure to timely respond is deemed acquiescence to the

facts alleged in the government's summary judgment motion. The Court thus

considers the government's properly supported facts as undisputed.[5] *See Gerst v.*

*Canyon Cnty. Jail*, No. 1:17-CV-286-BLW, 2019 WL 1386369, at *2-3 (D. Idaho

---

[4] As noted, Mr. Spear and Ms. Gerke filed "notices" with the Court on April 25 and 28, 2023. *See* Dkts. 29 and 36. Those notices, however, consist of documents that, from what the Court can decipher, lack any connection to the matter at hand. The only potentially relevant information provided in the notices was various deeds and acknowledgments of deeds. *See* Dkts. 29-3, 29-4, 29-5, 29-6, 36-2, 36-3, 36-4 and 36-5. To the extent that those documents provide any conflicting evidence, the Court will construe those facts in favor of the defendants under the summary judgment standard.

[5] Notably, the government failed to provide a separate statement of undisputed facts in accordance with Idaho District Local Rule 7.1(b)(1). Instead, the government relies on its verified complaint to support its factual allegations. *See Gov.'s Br.* at 2 n.1, Dkt. 23. While the Court generally requires that the parties adhere to the local procedural rules, in the Ninth Circuit "a verified complaint may serve as an affidavit for purposes of summary judgment if it is based on personal knowledge and if it sets forth the requisite facts with specificity." *Moran v. Selig*, 447 F.3d 748, 760 (9th Cir. 2006) (citations omitted). Since the Defendants have not objected, the Court finds the Verified Complaint sufficient for purposes of summary judgment. *See* Fed. R. Civ. P. 56(c)(4).

**MEMORANDUM DECISION AND ORDER - 9**

Mar. 27, 2019).

**B.**    **Claims against Twin Cedars**

The government seeks summary judgment against all the defendants in this case, including Twin Cedars. *See Gov.'s Br.*, Dkt. 23 (referring to the defendants collectively). However, as explained below, summary judgment is not the proper procedure to obtain a judgment against Twin Cedars.

As noted, Mr. Spear and Ms. Gerke have elected to proceed *pro se* in this matter. *See* Dkts. 12 and 13 (the Answer filed is signed by Mr. Spear and Ms. Gerke, and no notice of appearance has been filed). Unlike the individual defendants, Twin Cedars, as a business entity, cannot appear in this matter without being represented by an attorney. *See* Dist. Idaho Loc. Civ. R. 83.4(d) ("Whenever an entity other than an individual desires or is required to make an appearance in this Court, the appearance shall be made only by an attorney of the bar of this Court or an attorney permitted to practice under these rules."); *see also Rowland v. Calif. Men's Colony*, 506 U.S. 194, 202 (1993) (business entities may appear in federal court only through licensed counsel). Thus, Twin Cedars has yet to appear in this case. *See also Gov.'s Br.* at 10 n.5, Dkt. 23.

Nonetheless, the government elected to move for summary judgment against Twin Cedars. The proper procedure to obtain a judgment where a party fails to

appear, however, is by obtaining a default judgment under Federal Rule of Civil Procedure 55. *See, e.g., Yandell v. Washington*, No. 221CV0469DADACP, 2022 WL 16963935, at *2 (E.D. Cal. Nov. 16, 2022) (finding summary judgment premature where the defendant has not yet appeared in the case); *Derrico v. Moore*, No. 1:17CV866, 2019 WL 1876960, at *8 (N.D. Ohio Apr. 25, 2019) (refusing to enter summary judgment, "finding default judgment under Fed. R. Civ. P. 55 is the proper procedure to obtain judgment against a party that has not answered a complaint."); *United Cmty. Bank v. Blythe Properties*, No. 1:12-CV-401, 2014 WL 852655, at *1 n.2 (E.D. Tenn. Mar. 5, 2014) (granting summary judgment only as to the defendant who had appeared and finding default judgment "a better course with respect" to the other two defendants who had not appeared). The Ninth Circuit has explained that Rule 55 requires a "two-step process" consisting of (1) seeking entry of default; and (2) filing a motion for entry of default judgment. *See Symantec Corp. v. Global Impact, Inc.*, 559 F.3d 922, 923 (9th Cir. 2009) (noting the "two-step process of 'Entering a Default' and 'Entering a Default Judgment'"); *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986) ("[plaintiff] apparently fails to understand the two-step process required by Rule 55.").

Although a default judgment against Twin Cedars will likely mirror the

motion for summary judgment, the government has not yet sought entry of default. Moreover, it is unclear whether Twin Cedars has properly been notified or is aware of this looming motion for judgment as a matter of law. The Court, therefore, finds it improper to construe the government's request for summary judgment as a motion for default judgment without the government completing the proper procedural prerequisites under Rule 55. Accordingly, the Court will deny the government's summary judgment motion as it relates to Twin Cedars.

### C.    Claims against Mr. Spear and Ms. Gerke

As mentioned, the government seeks summary judgment on liability for all its claims. Accordingly, the Court will address each claim in turn.[6] However, since establishing ownership of the subject property is a threshold matter, the Court will begin there.

### 1.  Ownership of Tracts Q-1738 and Q-1786

To prevail on its claims, the government must first establish that the United States owns Tracts Q-1783 and Q-1786. As discussed above, the government's

--------------------

[6] Upon review of the government's complaint and motion, many of the government's claims appear to be a different means to the same end. While the Court suspects that many claims will be duplicative of each other, the Court finds it must address each claim since the government has requested that liability be bifurcated from damages and has not indicated what relief it intends to seek under what claim.

verified complaint shows that the United States acquired Tract Q-1786 by sale and warranty deed in 1954 and Tract Q-1783 by condemnation in 1956. *See Compl.* ¶¶ 13-20, Dkt. 1-1.

Given the lack of opposition by Ms. Gerke and Mr. Spear, the government's unequivocal claims are generally sufficient to establish that the United States owns the subject property. *See Gov.'s Br.* at 4-6, Dkt. 23. However, as noted, Ms. Gerke and Mr. Spear have provided the Court with a warranty deed, a gift deed, and a deed of trust through various filings. *See* Dkts. 36-3 and 36-5. While a district court is "not required to comb the record to find some reason to deny a motion for summary judgment[,]" *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001), the Court will address the various documents because Mr. Spear and Ms. Gerke have elected to proceed pro se. *See Erickson v. Pardus*, 551 U.S. 89 (2007) (documents filed pro se are "to be liberally construed[.]").

Turning to the deeds, the Court finds that Mr. Spear and Ms. Gerke have failed to create a material dispute regarding the United States' ownership of the subject property. Ultimately, the Court is simply unable to discern any useful information from the deeds. Indeed, the most the Court can conclude is that Ms. Gerke and Mr. Spear appear to be claiming an interest in property somewhere in or around Sandpoint, Idaho. Without further clarification or explanation, the deeds

alone are insufficient to create a material dispute regarding the government's ownership of Tracts Q-1783 and Q-1786.

Moreover, the government provided an expert report refuting any potential argument that the deeds conflict with the government's ownership claims. After attempting to map the warranty deed, gift deed, and deed of trust, Mr. Vega—a Branch Chief for the USACE—concluded that "none of the documents describe property that overlaps with the subject property and encroachments at issue." *Vega Dec.* ¶ 10, Dkt. 48-1. While Mr. Vega's map shows that the deeds cover areas adjacent to Tracts Q-1783 and Q-1786, there is no overlap with the land at issue. *See id.* at 6-8. Again, Ms. Gerke and Mr. Spear have not disputed Mr. Vega's conclusions.

Accordingly, the government has established that the United States owns Tracts Q-1783 and Q-1786 for the purpose of summary judgment. With the subject property's ownership set, the Court will turn to the government's claims.

## 2.  Ejectment

The government first seeks summary judgment on its claim for ejectment. *See Gov.'s Br.* at 13, Dkt. 23. To establish a claim for ejectment under Idaho law, a plaintiff must establish three elements: (1) ownership of the property, (2) possession by the defendant, and (3) refusal to surrender possession by the

defendant." *Elsaesser v. Gibson*, 484 P.3d 866, 872 (Idaho 2021) (citing *Pro Indiviso, Inc. v. Mid-Mile Holding Tr.*, 963 P.2d 1178, 1182 (Idaho 1998)). The Idaho Supreme Court has explained that a plaintiff "must recover upon the strength of his own title, and not upon the weakness of that of his adversary." *Id.* (quoting *Miller v. Lewiston-Clarkston Canning Co.*, 209 P. 194, 195 (Idaho 1922)).

As discussed above, the government has shown that the United States owns Tracts Q-1783 and Q-1786. The government likewise has established that Ms. Gerke and Mr. Spear have constructed various encroachments that remain on the United States' property. Finally, despite years of requests and attempted negotiations, the defendants refuse to remove said encroachments from the subject property. Thus, the government has established each element of its ejectment claim against Mr. Spear and Ms. Gerke.

### 3. Trespass

The government next claims that it is entitled to judgment as a matter of law on both its common law trespass claim and its statutory trespass claim under Idaho Code § 6-202(2)(a).[7] *See Gov. Br. at 16*, Dkt. 23.

---

[7] Idaho Code § 6-202(2)(b) defines acts that constitute civil trespass with damages. However, the government appears only to be raising a claim for statutory civil trespass under Idaho Code § 6-202(2)(a). *See Gov.'s Br.* at 16, Dkt. 23. Thus, the government's common law
(Continued)

**MEMORANDUM DECISION AND ORDER - 15**

Idaho Code § 6-202 states that "any person who enters or remains upon the real property of another person without permission commits a civil trespass." Idaho Code § 6-202(2)(a). Idaho case law has similarly defined common law trespass as "the wrongful interference with the right of exclusive possession of real property." *Moon v. N. Idaho Farmers Ass'n*, 541, 96 P.3d 637, 642 (Idaho 2004). The Idaho Supreme Court recently explained that to prevail on a common law trespass claim, a plaintiff has the burden of proving: (1) that the defendant went upon the plaintiff's land, (2) that the plaintiff did not consent to defendant's entry on plaintiff's land; and the nature and extent of the damages to plaintiff and the amount there of." *Greenfield Fam. Tr. v. Olive Fountain Land Co., LLC*, 516 P.3d 96, 105 (Idaho 2022) (citing IDJI 4.40). Although the Court specifically explained that it is the plaintiff's burden to establish "a causal connection between the defendant's alleged wrongful conduct and the plaintiff's injury, as well as the extent of the injury sustained[,]" the court later clarified that "[i]n cases of trespass to land, the plaintiff need not prove actual harm in order to recover nominal damages. Nominal damages are presumed to flow naturally from a wrongful entry

---

and statutory trespass claim seems to be the same, especially since Idaho amended the statute in 2018 to remove the requirement that a plaintiff make claims for treble damages and that the trespass be willful and intentional. *See United States v. Idaho Cnty. Light & Power Coop. Ass'n, Inc.*, No. 3:17-CV-00391-CWD, 2020 WL 877809, at *7 n.9 (D. Idaho Feb. 21, 2020).

**MEMORANDUM DECISION AND ORDER - 16**

upon land." *Id.* at 105-07 (citations omitted); *see also Radford v. Van Orden*, 483 P.3d 344, 357 (Idaho 2021), *as amended* (Mar. 22, 2021) ("Moreover, the [plaintiffs] were entitled, at the very least, to nominal damages.") (citations omitted). Thus, it does not appear that the "third" element is necessary to determine liability. Rather, to determining liability for common law trespass under Idaho law, it appears that only the first two elements are required, which aligns with the traditional elements of common law trespass. *See United States v. Idaho Cnty. Light & Power Coop. Ass'n, Inc.*, No. 3:17-CV-00391-CWD, 2020 WL 877809, at *7 (D. Idaho Feb. 21, 2020) ("The traditional common law elements of trespass to land are: (1) an invasion, (2) which interferes with the right of exclusive possession of the land, and (3) which is a direct result of some act committed by the defendant.") (citing *Mock v. Potlatch Corp.*, 786 F. Supp. 1545, 1548 (D. Idaho 1992)).

Even though there does not seem to be a meaningful difference between the government's trespass claims, the undisputed facts show that the government is entitled to summary judgment regarding liability on both causes of action. First, the government has established that the United States owns Tracts Q-1783 and Q-1786. Second, the undisputed facts show that Mr. Spear and Ms. Gerke erected various encroachments that have interfered with the United States' right to

exclusive possession of its land. *See Thomas v. Thomas*, No. 1:14-CV-00131-REB, 2015 WL 1467207, at *7 (D. Idaho Mar. 30, 2015) ("A trespass may be committed by the continued presence on the land of a structure, chattel, or other thing which the actor has tortiously placed there, whether or not the actor has the ability to remove it.") (quoting Restatement (Second) of Torts § 161 (1965)). The construction of a fence to classify the United States' property as private lake-front property is particularly troubling. Third, Mr. Spear and Ms. Gerke have repeatedly been informed that the United States owns the property at issue and have refused to vacate, surrender, and remediate the property despite years of requests from the government. *See Gov.'s Br.* at 15, Dkt. 23.

Accordingly, the government has established that under Idaho law, Mr. Spear and Ms. Gerke are liable for common law and statutory trespass. However, to be clear, the government has not established that the trespass has resulted in any specific harm to the government other than that which is presumed to flow naturally from a wrongful entry upon land. *See Greenfield*, 516 P.3d at 106-07. But, as discussed above, such a showing is not necessary to the Court's grant of summary judgment on the issue of liability.

### 4.  Nuisance

The government seeks summary judgment on its private and public nuisance

claims against Mr. Spear and Ms. Gerke. *See Gov.'s Br.* at 17, Dkt. 23.

In Idaho, a nuisance generally "applies to the wrongful interference with the use and enjoyment of real property." *Moon*, 96 P.3d at 642 (citing *Mock,* 786 F. Supp. 1545). Specifically, "nuisance" is defined as:

> Anything which is injurious to health or morals, or is indecent, or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, stream, canal, or basin, or any public park, square, street, or highway, is a nuisance.

Idaho Code § 52-101; *see also Newton v. MJK/BJK, LLC*, 469 P.3d 23, 33 (Idaho 2020). "A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal." Idaho Code § 52-102. A private nuisance is "[e]very nuisance not defined by law as a public nuisance or a moral nuisance." Idaho Code § 52-107; *see also Newton*, 469 P.3d at 33.

Again, the Court sees no meaningful difference between the government's nuisance claims, or its nuisance and trespass claims. Generally, the government claims that the defendants have built various encroachments on the United States' property, which they refuse to remove. The only apparent difference between the government's claims is whether the encroachments are classified as wrongful

interference with the "exclusive possession of land" or "with the use and enjoyment of real property." Nevertheless, the Idaho Supreme Court has explained that "an action could be said to lie in nuisance and in trespass[.]" *Moon*, 96 P.3d at 642.

Therefore, for the same reasons as discussed above, the government has shown that it is entitled to summary judgment under its claim for private nuisance. Mr. Spear and Ms. Gerke have constructed various encroachments on the United States' land, including erecting a fence that restricts the use and access of that land. These encroachments alone demonstrate that Mr. Spear and Ms. Gerke have and continue to interfere with the United States' right to use and enjoy Tracts Q-1783 and Q-1786.

However, unlike the government's private nuisance claim, factual issues remain regarding its public nuisance claim. The government argues that the defendants' actions constitute a public nuisance because the subject land is being managed for the benefit of the public. *See Gov.'s Br.* at 18, Dkt. 23. The government explains that "fences constructed and maintained by Defendants suggest that the land is private and almost completely obstruct [the] use of the lake-front land by the public." *Id*. However, even under the government's explanation, questions of material fact remain. Words like "suggest" and "almost

completely" are necessarily speculative, and—when viewed in the light most favorable to the non-moving party—create material issues of fact. Further, the government has not provided any evidence showing that a member of the public has, in fact, been obstructed from using the land, let alone a "considerable number of persons." *See, e.g., Newton*, 469 P.3d at 35 (explaining that "the opinion of three other residents does not necessarily reflect the *entire* community or neighborhood on Everwell Bay and Lake Coeur d'Alene.") (emphasis original). Therefore, the Court will deny the government's motion regarding its public nuisance claim.

As a final note, even though the government has established that Mr. Spear and Ms. Gerke are liable under claims for trespass and nuisance, the government has not requested—and the Court has not rendered—any decision regarding potential remedies under these claims. Moreover, due to the apparent overlap in the government's claims, the Court has substantial concerns that the government's claims may be duplicative and will, therefore, clarify that establishing liability under each claim does not provide the government an avenue for double recovery. *See, e.g., United States v. Idaho Cnty. Light & Power Coop. Ass'n, Inc.*, No. 3:17-CV-00391-CWD, 2020 WL 877809, at *9 (D. Idaho Feb. 21, 2020) ("the Court finds that the United State' claims for nuisance and trespass may be maintained together with its negligence claim, provided there is only one recovery."). Rather,

**MEMORANDUM DECISION AND ORDER - 21**

it remains the government's burden to show it is entitled to any specific relief it may seek under its various legal theories.

## ORDER

**IT IS ORDERED that:**

1.      Plaintiff's Motion for Summary Judgment as it relates to Michael J. Spear and Billie Jean Gerke (Dkt. 23) is **GRANTED** in accordance with this decision.

2.      Plaintiff's Motion for Summary Judgment as it relates to Twin Cedars Camping and Vacation Rentals, LLC, (Dkt.  23) is **DENIED**.

DATED: October 4, 2023

B. Lynn Winmill
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER - 22**