UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL JEAN SPEAR, BILLIE JEAN GERKE, and TWIN CEDARS CAMPING AND VACATION RENTALS, LLC,<br><br>Defendants. | Case No. 2:22-cv-00439-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is a Motion for Remedies filed by the Plaintiff, United States of America. Dkt. 80. No response has been filed. The Court will grant the motion in part and deny it in part.

## BACKGROUND

This case involves a property dispute between the United States government and Defendants Michael J. Spear, Billie J. Gerke, and Twin Cedars Camping and Vacation Rentals, LLC over two lake-front parcels of land in northern Idaho. Mr. Spear and Ms. Gerke are a married couple who formed Twin Cedars, LLC. Mr.

**MEMORANDUM DECISION AND ORDER - 1**

Spear and Ms. Gerke, individually and through Twin Cedars, rent vacation homes, tents, RV sites, and other properties near Sandpoint, Idaho. Since approximately 2015, the defendants have possessed, used, advertised, and rented facilities or sleeping accommodations located on property owned by the United States without its consent or permission. Specifically, the defendants have built or erected one or more tepees and tents, a tent pad, a boat house, railings into the water, a hammock, shower, plumbing and electrical equipment and facilities, a boat ramp, dock, gazebo, and fence, located on real property on the banks of Lake Pend Oreille that the United States describes as Tracts Q-1783 and Q-1786.

   The United States government and the United States Army Corps of Engineers first became aware of the encroachments on the subject land in 2015. Throughout 2015 and 2016, the government attempted to informally resolve this matter by requesting that Mr. Spear remove and explain the construction of the encroachments. In 2017, after Mr. Spear failed to remove any of the encroachments, USACE's Chief for Realty Operations in Seattle sent Mr. Spear multiple letters requesting that Mr. Spear remove any encroachments. Over the next few years, the government continued to send Mr. Spear letters demanding that he remove the encroachments while taking additional steps to ensure that the United States was the rightful owner of the land, including requesting a title

**MEMORANDUM DECISION AND ORDER - 2**

guarantee from its insurance company and commissioning a survey of the subject property.

After years of informally attempting to have the defendants remove the encroachments on Tracts Q-1783 and Q-1786, the United States commenced this action for ejectment, common law trespass, civil trespass under Idaho Code § 6-202(a), private nuisance, and public nuisance. *Compl.*, Dkt. 1. The Court entered summary judgment against Mr. Spear and Ms. Gerke as to all of the government's claims except for its public nuisance claim. *Order*, Dkt. 71. After the Clerk of the Court filed an entry of default as to Twin Cedars, and following a motion by the government, the Court entered default judgment against that defendant as to the same claims in which the government had prevailed against Mr. Spear and Ms. Gerke. *Order*, Dkt. 82. Thus, all named defendants have been found liable to the government for ejectment, common law trespass, civil trespass, and private nuisance. The Court now considers the government's unopposed Motion for Remedies. *Pl.'s Mot.*, Dkt. 80.

## ANALYSIS

The government requests that the Court issue the following: an order requiring the defendants to vacate the subject property within 30 days or be ejected; an injunction prohibiting the defendants from trespassing on the subject

property, constructing or maintaining encroachments thereon, and renting the subject property; an order to disgorge profits; and an order for attorney fees and the costs of investigation. *Pl.'s Mot.*, Dkt. 80. The Court will address each requested remedy in turn.

### A. Order Requiring Defendants to Vacate the Subject Property or be Ejected

The government's request for an order directing the defendants to vacate the subject property and remove all encroachments within thirty days, or be ejected, is to redress its ejectment claim. *Id.* at 4–5. Ejectment is a proper remedy where, as here, an owner is not in possession of the subject property and another party is, either wrongfully or in hostility against the owner's title. *See Irwin v. Hoffman*, 319 Pa. 8, 179 A. 41 (1935); *Hawkins v. Dillman*, 268 Mich. 483, 256 N.W. 492 (1934). The Court agrees to the extent that the defendants should be ordered to vacate the subject property.

A court may order a defendant liable in an ejectment action to remove encroachments by an injunction, provided that such removal would not be inequitable or oppressive. *Proctor v. Huntington*, 146 Wash. App. 836, 847–51, 192 P.3d 958 (Wash. Ct. App. 2008); *Kirschner v. Baldwin*, 988 So. 2d 1138, 1143 (Fla. Dist. Ct. App. 2008); *Big Bass Lake Community Ass'n v. Warren*, 950 A.2d 1137, 1146 (Pa. Commw. Ct. 2008). "An injunction is an extraordinary remedy

**MEMORANDUM DECISION AND ORDER - 4**

never awarded as of right." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 784 (9th Cir. 2019) (citation and quotation marks omitted). A plaintiff seeking a permanent injunction must demonstrate:

> (1) actual success on the merits; (2) that it has suffered an irreparable injury; (3) that remedies available at law are inadequate; (4) that the balance of hardships justify a remedy in equity; and (5) that the public interest would not be disserved by a permanent injunction.

*Id.* (citations omitted). "It is not enough for a court considering a request for injunctive relief to ask whether there is a good reason why an injunction should *not* issue; rather, a court must determine that an injunction *should* issue . . . ." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 158 (2010).

The government does not argue that these elements have been met with respect to the requested injunction ordering the removal of encroachments from the subject property. *Pl.'s Mot.*, Dkt. 80, at 4–5 (stating only that the removal of encroachments is "a normal remedy for trespass," although it has requested this relief in connection with its ejection claim). The government has simply attached to its motion the Airbnb and Vrbo listings for the subject property, which advertise that the property contains a bell tent, porta-potty, outdoor shower and sink, propane water heater, hot tub, barbeque grill, table, hammock, beach shelter, and a "large wooden fence." *Haws Decl.*, Dkt. 80-1. This attachment does not indicate which items were brought to the subject property by the defendants. The Complaint,

**MEMORANDUM DECISION AND ORDER - 5**

however, indicates that the defendants erected the fence referenced in the rental listings. *See Compl.*, Dkt. 1, ¶ 24. Additionally, the Complaint provides that the defendants' encroachments "include, but are not limited to, one or more tepees and tents, a foundation/tent pad, a boat house, railings into the water, a hammock, shower, plumbing and electrical equipment and facilities, a concrete boat ramp, dock, gazebo, fire and horse-shoe pits, and riprap and bank support structures." *Id.* Based on the Complaint's allegations, it appears that an injunction requiring the defendants to remove the encroachments within a 30-day period would be oppressive. In any event, the government has not acknowledged that the requested order would constitute injunctive relief or argued why it satisfies the *Edmo* test. Accordingly, the Court will deny the request in this respect.

The government also requests that the Court issue a writ of assistance to assist in ejecting the defendants from the subject property. *Pl.'s Mot.*, Dkt. 80, at 4–5. Specifically, it requests that the writ direct the defendants to turn over possession of the subject property within 30 days and remove all encroachments within the same period, as well as empower the U.S. Marshals Service to remove the defendants and any encroachments from the subject property at the defendants' expense if they fail to comply with the Order. *Id.*

Federal Rule of Civil Procedure 70 governs the enforcement of judgments

**MEMORANDUM DECISION AND ORDER - 6**

by federal courts. Rule 70(a) explains that if a party fails to comply with a court order to perform a specific act, the court may appoint another to carry out the act at the disobedient party's expense. Rule 70(d) provides simply that "[o]n application by a party who obtains a judgment or order for possession, the clerk must issue a writ of execution or assistance." A federal court typically issues a writ of assistance to enforce an order for delivery of possession to a property owner after the liable party fails to comply with the order. *See England v. O'Briant*, 2019 WL 7331863, *1 (W.D. Mich. 2019) (declining to issue writ when court had not ordered defendant to perform a specific act); *United States v. 0.37 of an Acre of Land*, 577 F. Supp. 236 (D. Mass. 1983) (issuing writ after court issued order for delivery of possession and defendant refused to comply); *see also* 12 Fed. Prac. & Proc. Civ. § 3021 (3d ed.) ("Rule 70 gives the courts ample power to deal with parties who week to thwart judgments by refusals to comply with orders to perform specific acts."). The government's request for a writ is premature. It may submit a proposed writ, however, and it may apply pursuant to Rule 70(d) should the defendants fail to comply with the Court's order to vacate the subject property in the time specified.

### B. Permanent Injunction

The government seeks, as a remedy for its claims for trespass and private

MEMORANDUM DECISION AND ORDER - 7

nuisance, an injunction prohibiting the defendants from (a) trespassing on the subject property, (b) constructing or maintaining encroachments on the property, or (c) renting or listing for rent the subject property in any place. *Pl.'s Mot.*, Dkt. 80, at 6. The Court will again apply *Edmo*'s five-element test. *See* 935 F.3d at 784.

*Edmo*'s first element, actual success on the merits, is clearly satisfied here because the government has already prevailed against all three defendants on its claims for ejectment, trespass, and private nuisance. *Order*, Dkt. 71; *Order*, Dkt. 82. With respect to the element of irreparable injury, the government argues that it will be unable to provide public access to the subject property unless the defendants are enjoined from continuing to use it. Considering that the defendants have represented through their listings that they own the subject property and claim it contains a "private beach," the Court agrees.

The third and fourth elements require the Court to consider whether the remedies available at law are inadequate and whether the balance of hardships justify a remedy in equity. The government argues that there are no adequate remedies in law because the defendants have refused to participate in this action or communicate with the government in good faith. The Court agrees; the defendants did not cease their unlawful privatization of the subject property after the United States Army Corps of Engineers notified Mr. Spear in July 2017 of the

**MEMORANDUM DECISION AND ORDER - 8**

encroachment, nor did the defendants make any apparent efforts to vacate the property after this Court entered summary judgment against Ms. Gerke and Mr. Spear as to most of the government's claims. *Compl.*, Dkt. 1, ¶ 30; *Pl.'s Mot.*, Dkt. 80, at 6. With respect to the fourth element, the government argues that the defendants will suffer no harm from the requested injunction because "curbing Defendants' illegal commercial enterprise cannot be considered a 'harm' . . . ." *Pl.'s Mot.*, Dkt. 80, at 8. Its point is well taken.

Finally, the Court concludes that the public would not be disserved by the requested permanent injunction because the defendants' unlawful use has interfered with public access to the subject property. The public's interest in accessing the public boat launch is aligned with the issuance of an injunction against the defendants' unlawful privatization of the adjoining land. Accordingly, the Court will enjoin the defendants from trespassing on the subject property, constructing or maintaining encroachments on the subject property, and renting or listing for rent the subject property.

### C. Disgorgement

The government requests an order for disgorgement in the amount of $249,834.97 as relief on its claims for trespass and private nuisance. *Pl.'s Mot.*, Dkt. 80, at 8–9. It argues it is entitled to disgorgement of funds received not only

through the unlawful renting of the subject property, but through the rental of nearby properties actually owned by the defendants if the defendants marketed the subject property in those listings as a private beach amenity.

Idaho's appellate courts have not yet considered whether disgorgement may be ordered as a remedy for trespass or private nuisance. The Restatements, however, do contemplate the disgorgement of profits derived from the knowing trespassory use of real property. *See* Restatement (3d) of Restitution and Unjust Enrichment § 40 cmt. b (2011) ("a conscious wrongdoer will be stripped of gains from unauthorized interference with another's property . . . ."); Restatement (2d) of Torts § 929 cmt. c (1979) ("if the defendant is a wilful trespasser, the owner is entitled to recover from him the value of any profits made by the entry."). Idaho's highest court has adopted § 929 of the Second Restatement of Torts. *Whitham Trustee of Kent G. Whitham and Linda M. Whitham Revocable Trust v. Creamer*, 525 P.3d 746, 756 (Idaho 2023). Thus, disgorgement is an available remedy in Idaho for trespass and nuisance by virtue of the Restatement.

In federal courts, disgorgement generally requires "a wrongdoer to turn over all profits obtained by violating the law." *Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179, 1195 (9th Cir. 2016). Idaho courts interpret this remedy similarly. *See Holladay v. Lindsay*, 152 P.3d 638, 641 (Idaho 2006) (a court may require a

defendant to disgorge profits which were improperly acquired).

The Court agrees with the government to the extent that the defendants must disgorge profits earned from unlawfully renting the subject property. The record indicates that the defendants earned $53,068.90 through its listing of the subject property on Airbnb.com and earned $10,635.42 through its listing of the subject property on Vrbo.com. *Haws Decl.*, Dkt. 80-1, at 4. Thus, the defendants must disgorge profits in the total amount of $63,704.32.

With respect to profits earned from listings for nearby properties actually owned by the defendants which reference the lakeshore, the government offers no support for ordering disgorgement aside from its argument that "by describing the subject property as a private beach amenity, [the defendants used] that falsehood to support and encourage the rental of other properties that they control." *Pl.'s Mot.*, Dkt. 80, at 8–9. The government has provided a Vrbo listing by the defendants which is near, but not on, the subject property, and references a "private shoreline . . . just west of the Hawkins Point boat dock." *Haws Decl.*, Dkt. 80-1, at 22. The government has also argued that the defendants' illegal commercial enterprise in renting the subject property has interfered with the public's use of the same property. *Pl.'s Mot.*, Dkt. 80, at 8. The record does not contain any declarations or affidavits stating that individuals rented the defendants' property nearby the

**MEMORANDUM DECISION AND ORDER - 11**

subject property in reliance on the misrepresentation that the shoreline was "private." Whether the defendants listed the property as being in proximity to a "private" shoreline or "public" shoreline, potential renters would understand that they would have access to the lakeshore in one manner or another. Accordingly, the Court will decline to order the defendants to disgorge profits earned from their own properties which referenced the subject property.

### D.  Attorney Fees and Costs of Investigation

Finally, the government requests attorney fees and the costs associated with investigating the defendants' trespass in the form of damages. *Pl.'s Mot.*, Dkt. 80. It argues that Idaho Code § 6-202 provides for an award of "damages" for civil trespass which includes attorney's fees and costs of investigation. However, it acknowledges that the statute also provides that attorney fees and investigation costs should be taxed as costs in the associated civil action. *Id.*; *see* Idaho Code § 6-202(3). Local Civil Rules 54.1 and 54.2 provide the usual procedure for requesting attorney fees and costs in civil actions. The Court will observe this procedure for the award of fees and costs and decline to include these fees or costs in its damages award.

### ORDER

IT IS ORDERED that:

MEMORANDUM DECISION AND ORDER - 12

1.  The Motion for Remedies (Dkt. 80) filed by the Plaintiff, United States of America, is **GRANTED in part and DENIED in part**. It is **granted** to this extent:

    a. the Defendants, Billie Jean Gerke, Michael Jean Spear, and Twin Cedars Camping and Vacation Rentals, LLC, must vacate the property owned by the United States of America east of Sandpoint, Idaho in Bonner County and adjacent to the Hawkins Point boat launch on the banks of Lake Pend Oreille, known as Tract No. Q-1783 and Tract No. Q-1786, within thirty (30) days of this Order; and

    b. the Defendants are prohibited from trespassing upon, constructing or maintaining encroachments upon, and renting or listing for rent, Tracts Q-1783 and Q-1786.

2.  IT IS FURTHER ORDERED that the Defendants, Billie Jean Gerke, Michael Jean Spear, and Twin Cedars Camping and Vacation Rentals, LLC, are ordered to disgorge profits earned from the renting of Tracts Q-1783 and Q-1786 in the amount of $63,704.32 to the Plaintiff, United States of America.

3.  IT IS FURTHER ORDERED that the United States of America may submit a proposed writ of assistance for entry by the Clerk should the Defendants fail to vacate Tracts Q-1783 and Q-1786 as ordered.

4.  A separate Judgment shall issue.

DATED: March 4, 2024

B. Lynn Winmill
U.S. District Court Judge