UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　Plaintiff,<br><br>　　v.<br><br>MICHAEL JEAN SPEAR, BILLIE JEAN GERKE, and TWIN CEDARS CAMPING AND VACATION RENTALS, LLC,<br><br>　　Defendants. | Case No. 2:22-cv-00439-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

Before the Court is Plaintiff the United States of America's Amended Motion for Investigation Costs (Dkt. 96). For the reasons explained below, the Court will grand the motion.

# BACKGROUND[1]

The parties are familiar with background of this litigation, which will not be repeated here. Briefly, however, the government has prevailed on many of its

---

[1] A fuller recitation of the background can be found in this Court's earlier decisions. *See, e.g., July 3, 2024 Memorandum Decision and Order,* Dkt. 92, at 1-3; *Oct. 4, 2023 Memorandum Decision & Order,* Dkt. 71, at 1-7.

claims, including its trespass claim and has requested an award of attorneys' fees and investigative costs. In an earlier order, the Court awarded $27,750.40 in attorneys' fees, but denied the motion for investigative costs without prejudice. *See July 3, 2024 Order,* Dkt. 92. The government has now renewed its request for investigative costs, seeking $46,872.70 in investigative costs.

## GOVERNING LEGAL STANDARD

The government seeks investigative costs under Idaho Code § 6-202(3)(a), which provides that civil trespassers are liable to plaintiffs for damages, reasonable attorney's fees, and, as relevant here, "*[r]easonable costs associated with investigating any trespass*, as approved by the court, . . . ." Idaho Code § 6-202(3)(a) (emphasis added). There are a handful of Idaho decisions discussing attorneys' fee awards under this statute, but the Court has not unearthed any published decisions discussing awards of investigative costs. Still, though, this Court routinely considers litigants' requests for other sorts of costs. Likewise, the Court often considers requests for attorneys' fees, so it has more than a passing familiarity with the standards necessary for litigants to recover such awards. The touchstone of any such request is reasonableness—both in terms of time expended and the rate charged. Those cases will inform the court's analysis here. *Cf. Trustees of the Chicago Plastering Institute Pension Trust v. Cork Plastering Co.*, 570 F.3d 890, 902-03 (7th Cir. 2009) (holding that the district court appropriately

MEMORANDUM DECISION AND ORDER - 2

judged a request for statutory audit costs by the standard applied to attorney-fee requests). In other words, the government must support its request for investigative costs with sufficient specificity that the Court may engage in an appropriate review of the reasonableness of the request. *See id.* at 905.

## ANALYSIS

The investigative costs the government is seeking fall into two categories: (1) time spent investigating the physical trespass; and (2) time and money spent confirming that the government owned the subject properties.

**1. Staff Time Spent Investigating the Trespass**

Turning to the first category—time spent investigating the trespass—the government initially reported that its staff spent 1,275 hours investigating the trespass, which resulted in a $109,125 expense. Nothing in the factual situation before the Court suggested that this massive time expenditure was reasonable, and the government did not provide any meaningful detail regarding the reported expense. For that reason, the Court denied, without prejudice, the government's request for investigative costs.

In its amended motion, the government has trimmed that 1,275 hours of reported labor to 36 hours—meaning it is now seeking $3,722.35 for this portion of its costs request, rather than $109,125. The government still hasn't provided the sort of detail the Court had hoped to receive in order to assess reasonableness.

MEMORANDUM DECISION AND ORDER - 3

Typically, when litigants seek costs based on hours billed multiplied by an hourly rate, the Court is able to see precisely who worked on the task, when they performed the work, what they did on that day, and what their billing rate was. Additionally, the Court will know the qualifications of the person performing the work, which allows it to determine whether the hourly rate billed is reasonable. When the Court has this sort of detail, assessing reasonableness is relatively straightforward. But here, the government lumped all employees, all tasks, all time, and all salary rates together in a brief, summary description. *See Second Vega Dec.*, ¶ 5.a, Dkt. 96-1.

On the other hand, the Court is mindful that the government does not bill clients based upon an hourly rate charged for each attorney, paralegal, investigator or accountant. So that reality must be considered by the Court in assessing the adequacy of the information offered in support of the request for reimbursement of investigative costs. Here, the government has cleared that lower bar, but just barely. As reported in the supporting declaration, the government requests reimbursement for 36 hours of work performed by staff members involving "approximately 11" trips to the property over a seven-year period. Those visits included a two-hour round trip from their offices at the Albeni Falls Dam.  Then while on site for roughly 1.5 hours per visit, the staff would walk the property and

document "encroachments and other evidence of trespass . . . ." *Id.* ¶ 5a.ii & iii. The total amount requested was calculated by multiplying the 36 hours times the hourly salary of each worker who contributed to the 36 hours. The Court would prefer that the government had "shown its math," by indicating the names of the employees, the position they hold, and their hourly salary. But, the Court will not require that here for two reasons. First, the government does not work like a law firm or accounting practice, and requiring that level of detail would be burdensome for the government and the taxpayer. Second, the Court can assess the reasonableness of the amount requested with the information provided. The time spent for 11 trips to the property with a two-hour, round-trip drive is clearly reasonable, and supports the modest amount requested.

## 2. Survey & Mapping Costs and Related Staff Time

The second category of costs relates to the government's efforts to confirm it owned the property. The government reports having spent a total of $43,150.35 related to surveying and mapping the property. As explained in Omar Vega's supporting declaration, this expense is broken down into two categories: First, the United States Army Corps of Engineers (USACE) paid a private survey firm, APS Survey & Mapping, Inc., to survey the boundaries of the subject property. *See Vega Dec.*, Dkt. 96-1, ¶ 5.b.i. Vega says this was done because "USACE wanted to confirm that USACE owned the subject property . . . [and] wanted to verify that

ownership through a disinterested third party." *Id*. The second category of surveying-and-mapping expense relates to time government employees spent writing the scope of work for the APS contract, managing the contract, and reviewing and approving APS's work. That amount totals $11,884.81. *Id*.

As a threshold matter, Court concludes that the governing Idaho statute covers this sort of an expense. The statute says plaintiffs are to be awarded reasonable costs associated with investigating the trespass. *See* Idaho Code § 6-202(3). One might argue that investigating whether you own a piece of property in the first place is different than investigating whether somebody is trespassing on your property. However, establishing the precise boundaries of one's property would seem to be a necessary first step in determining whether someone has encroached on those boundaries. Moreover, the statute seems to envision a broad view of what investigative costs would be reimbursable. Specifically, the statute does not limit the recovery to the investigation itself, but goes further in allowing the recovery of costs "*associated with*" the investigation. *See* Idaho Code § 6-202(3)(a)(iii). That would include the costs incurred in establishing the actual boundaries of your property.

Turning to the reasonableness of the request, the Court would normally require more detail than the government has provided. Reasonableness cannot be

**MEMORANDUM DECISION AND ORDER - 6**

determined in a vacuum. However, this case presents unusual challenges. The government is subject to rules and regulations which govern the process by which it can contract with private entities. The supporting affidavit makes clear that such a process was used here. The scope of the project was developed, the contract was overseen, and the amount paid was all approved by government employees. It is difficult to envision how, in the absence of some obvious irregularity, the Court could find unreasonable a contract amount approved in this fashion.

As for the other costs associated with the third-party survey, these were all part of scoping, overseeing and approving the survey and mapping contract in accordance with federal regulations. As such, they were necessary and unavoidable. Again, in the absence of some obvious irregularity, it is difficult to see how the Court could find that the expenses were unreasonable.

## ORDER

**IT IS ORDERED that** Plaintiff's Amended Motion for Investigation Costs of $46,872.70 (Dkt. 96) is **GRANTED.**

DATED: October 23, 2024

B. Lynn Winmill
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 7